## Rogers, et al. v. Biggstaff's Executor, et al.

(Decided June 19, 1917.)

### Appeal from Montgomery Circuit Court.

1. Judgment—Nunc Pro Tunc Order.—The general rule is that when an order or direction of the court has been omitted by inadvertence or mistake on the part of the judge or clerk and there is record evidence showing that all the steps necessary to have the omitted order or direction entered were duly made and taken, and by a reference to this record the court without any other evidence can see what judgment or order was intended to be entered, it may from this record evidence enter as of the date when it should have been entered a *nunc pro tunc* order.

2. Wills—Nunc Pro Tunc Order Directing Probate.—Where the records of the county court fail to show an order of the court directing the probate of a will, but the will itself is recorded in the county court clerk's office, and a certificate of the clerk is attached to it and recorded, and in which certificate it is recited that the order and judgment of probate was duly rendered after evidence heard, and which evidence the clerk recites to be that of the subscribing witnesses, such certificate of the clerk furnishes sufficient record evidence of what occurred to authorize at a subsequent circuit court the entry of the *nunc pro tunc* order directing the probation of such will.

3. Judgment—Nunc Pro Tunc Order—Limitation.—As long as the necessary record evidence exists, *nunc pro tunc* entries may be made under proper application unaffected by any limitation barring such proceedings.

JOHN A. JUDY for appellants.

W. B. WHITE and E. C. O'REAR for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Mary E. Bigstaff died testate on January 5, 1917, a resident of Montgomery county. Her will was duly probated in the county court of that county on the 9th day of January, 1917. She left a large estate valued at $250,000, or more, and by the eighth clause of her will she disposed of the residuum of her estate, after providing for debts and making specific devises, to her children and grandchildren, but giving to her children only a life estate with remainder to her named grandchildren, except to her grandchild, Mary Ragan Gay, she devised a present interest, but to all who received a present interest their share in remainder went to the grandchildren, and at their death to their children, if any living at that time, but if not, to her other grandchildren *per stirpes*.

In the same clause she directed her executor to convert her personal property into cash and to invest it in real estate in Kentucky, taking title thereto to the persons and in the manner indicated in her will.

After the executor qualified, which he did upon probate of the will, he entered into a contract agreeing to purchase 824 acres of land in Bath county, Kentucky, in compliance with the directions of the will. That contract of purchase was made with Thomas J. Bigstaff, Fenton B. Hill, Lizzie B. Ragan and O. Sam Bigstaff, adult children of the testatrix, and who were the owners of the tract of land proposed to be purchased. They held title to it under the will of Thomas T. Jones, their grandfather, and the father of Mrs. Bigstaff, the testatrix, which will was probated, or attempted to be probated, by the Bath county court on June 9, 1862.

By the third clause of Thomas T. Jones' will he devised the 824-acre tract of land to Mary E. Jones (Bigstaff) for and during her natural life, and at her death to her children.

After the agreement to purchase the tract of land in Bath county had been made by Mrs. Bigstaff's executor, he discovered that there was no judgment to be found in the records of the Bath county court ordering and directing the will of Thomas T. Jones to be probated. He thereupon instituted proceedings in that court for the purpose of having it enter an order *nunc pro tunc* directing the probate of the will of Thomas T. Jones. Due and proper notice was served upon all of the heirs of Thomas T. Jones, and on the devisees of Mrs. Bigstaff, of the day when such motion would be made, which was

May 23, 1917. After a full hearing of that motion, the court entered an order *nunc pro tunc,* as prayed for. After this was done the executor and the adult heirs and devisees of Mrs. Bigstaff filed this suit in the Montgomery circuit court against her infant devisees and heirs, setting up in greater detail the facts which we have related, and filed with their pleading a complete record of the proceeding had in the Bath county court whereby the *nunc pro tunc* order was obtained, and sought the judgment of the court upon the legality of the title to the 824-acre tract of land in which the executor proposed to make the investment as directed by Mrs. Bigstaff's will. After taking of testimony showing the value of the land, the propriety of the investment, and the proceedings had in the Bath county court with reference to the probating of the will of Thomas T. Jones, including the record made in the motion for the *nunc pro tunc* order, the case was submitted, and the court adjudged that the title to the 824-acre tract of land was complete, that the investment would be an appropriate one, and ordered and directed the executor to make it, and from that judgment the infants by their guardian *ad litem* prosecute this appeal.

There is no question made but that the price agreed to be paid for the land is reasonable, and that the quality of the land is most desirable. The only question presented is whether the condition of the record exhibits a legal establishment of the will of Thomas T. Jones.

That will is recorded upon the record books of the Bath county court, and immediately following it is this certificate:

"State of Kentucky,

"Bath County, ss.

"I, R. H. Conner, clerk of the county court for the county aforesaid, do certify that this instrument of writing purporting to be the last will and testament of Thomas T. Jones, deceased, and the codicil thereto annexed, were this day produced in open court and said will was proved by the oaths of J. F. Bradshaw and Thos. B. Gordon, witnesses thereto subscribed, and said codicil was proved by the oath of J. F. Bradshaw, a witness thereto subscribed, whereupon said will and codicil were ordered to be recorded and the same with this certificate have been duly admitted to record in my office.

"Given under my hand this 9th day of June, 1862.

"R. H. CONNER, Clerk."

Mrs. Bigstaff also had a copy of the will in her possession at the time of her death, with the same certificate upon it. Besides, it is conclusively shown that the orders of the Bath county court from April, 1862, to November of that year, both inclusive, were written in what was known as the minute book kept by that court, and that the minute book for that time is permanently lost.

The argument of counsel for appellees is that the *nunc pro tunc* order directing the probate of the will of Thomas T. Jones as of the date it was made is legal, and supplies the omission of the records of the Bath county court to show that the order was made at the time, and further that if this were not so that the due and regular probate of Jones' will would now be presumed after the lapse of nearly 55 years, especially when coupled with the fact that his heirs and devisees named in the will itself have acquiesced for that length of time in its terms and provisions.

The latter contention is denied by the guardian *ad litem,* and he attempts to meet the former one, as we understand his position, by insisting that the *nunc pro tunc* proceedings were so far removed from the time the Jones will was probated, if at all, that it is barred by limitations. But upon this point we are cited to no statute or authority except the cases of Allen v. Froman, 96 Ky. 313, and Reed's Admr. v. Benge, 112 Ky. 810, in which it is held that a proceeding for the original probate of a will is barred after the lapse of ten years from the time the right to probate it accrued. The law as thus announced by those cases is still vital in this state, but it has no bearing upon the question here, as the entry of a *nunc pro tunc* order is not the rendition of an original judgment, but is only a new or subsequent entry of an old order or judgment, and which, from some mistake, omission or oversight, was failed to be entered at the time it was made. It is substantially so held in the case of Ralls v. Sharp's Admr., 140 Ky. 744, wherein, upon the point under discussion, this court said:

"In other words, the court may do that which except for inadvertence or mistake would have been done. In making such entry the court is only correcting its own omission or mistake, or the omission or mistake of its clerk. It is not the making of a new order or direction, but the new entry of an old order or direction. It is merely placing the parties to the record in the condition the court intended they should be."

The proceeding, then, having for its purpose only the completion of the official memorial of what was actually done, and not the doing of a thing now which was not done then, is clearly not one original in its nature, and the doctrine of the cases referred to cannot apply.

In line with what we have just said is the holding of this court in the case of Montgomery v. Viers, 130 Ky. 694, when, 'speaking upon the question of limitation as applicable to motions for *nunc pro tunc* orders, this court said: "Nor is there a limitation upon the time when it (motion for *nunc pro tunc* order) may be done, unless such be found in the modern statutes of limitations."

We have no such statute, and from the nature and purpose of the proceeding, we see no just cause why a limitation should be fixed beyond which it could not be employed as long as legal and sufficient (memoranda) evidence can be furnished justifying its application.

Taking up now the law governing the entry of *nunc pro tunc* orders, we find that it seems to vary in different jurisdictions as to the character of evidence justifying such entries, but the better rule seems to be, and the one to which this court has uniformly adhered is, that the entry of the *nunc pro tunc* order can only be made upon evidence furnished by some memoranda, record, or writing in the cause indicating and establishing the character of judgment or order which the court actually rendered or made, but through some inadvertence or oversight failed to enter. This rule is stated in 11 Cyc. 764, thus: "But record entries *nunc pro tunc* can only be properly made when based on some writing in a cause which directly or by fair inferences indicates the purpose of the entry so sought to be made."

Cases from this court adopting that rule are Montgomery v. Viers, Ralls v. Sharp's Admr., *supra;* Gregory v. Meister, 141 Ky. 54; McAuliffe v. Helm, 157 Ky. 626; Chester v. Graves, 159 Ky. 244, and Wade v. Bryant, 9 Ky. Law Reporter, 875, and perhaps others. Excerpts from some of those cases will be sufficient to show the position of this court upon the question under consideration.

In the Viers case it is said: "Therefore, the rule is that such judgment (*nunc pro tunc*) can be entered only upon the evidence of the fact of its rendition contained in the record itself."

In the Graves case considerable discussion is indulged in and many authorities referred to upon the

authority of courts to make *nunc pro tunc* orders. After showing beyond question such authority, and discussing the rule as held by different courts relative to the character of evidence upon which such entries may be made, it is said:

"On the other hand, a number of the courts adhere firmly to the rule that *nunc pro tunc* entry can only be made upon showing some entry or memorandum on or among the record or *quasi* records of the court, and that parol evidence of the rendition of the judgment and of its terms cannot be received. Metcalf v. Metcalf, 19 Ala. 319, 54 Am. Dec. 190; Saxton v. Smith, 50 Mo. 490; Swain v. Naglee, 19 Cal. 127; Adams v. Raque, 22 Fla. 250, 1 Am. St. Rep. 191; Coughran v. Gutchens, 18 Ill. 390. The same view is taken by this court. Raymond v. Smith, 1 Metc. 65, 71 Am. Dec. 458; Montgomery v. Viers, 130 Ky. 690; Ralls, et al. v. Sharp's Admr., et al., 140 Ky. 744.''

It remains to be seen, then, whether the character of memoranda or other entries found in the record required by the cases, *supra,* as a justification for the *nunc pro tunc* entry exists in this case. We have seen that the will of Thomas T. Jones is recorded in the office of the clerk of the Montgomery county court, and by the certificate, *supra,* of the then clerk it is shown that the paper was proved by the persons whose names are subscribed thereto as witnesses, that it was ordered to be recorded, and that it was admitted to record in his office. According to our view, there could scarcely be found more substantial memoranda or data upon which to base a *nunc pro tunc* entry. Here we have the facts stated that the will was ordered probated, and which statements are made by the person upon whom the law casts the duty to make a record of what was done, and his statement of facts is made in his official capacity.

Some of the cases referred to have ordered such entries made when there were only memoranda made upon the minute books by the clerk, which statements on his part were not nearly so full and complete as those we have here. Others of the cases to which we have referred justify the *nunc pro tunc* entry from a skeleton memoranda made by the judge upon sheets of paper found in the papers of the case, and in the case of Wade v. Bryant, *supra,* neither the minutes kept by the clerk nor any order book showed the judgment which had actually been rendered, but the defendants treated the

matter as though a judgment had been rendered by assigning errors and executing a supersedeas bond in which it was recited that the judgment had been rendered, and it was held that these things were sufficient admissions of record to authorize the court at a subsequent term to make the *nunc pro tunc* entry of the judgment. Surely, if the admissions of the parties, and which are non-official, are sufficient to meet the requirements of the rule, statements certified to by the officer whose duty it is to make them, and who had charge of the records, would unquestionably be so. We, therefore, conclude that the *nunc pro tunc* entry. made by the Bath county court on May 23, 1917, wherein the judgment of that court ordering and directing the will of Thomas T. Jones to be probated was supplied was fully authorized, and that the Montgomery circuit court properly so held when it approved the proposed investment by the executor of the will of Mrs. Bigstaff. This renders it unnecessary to consider other questions presented and discussed.

Wherefore the judgment is affirmed.